**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------------------------X
NATALIA PIROGOVA,                                          :
                                                           :
                    Plaintiff,                             :   Case No._____
                                                           :
     -against-                                             :
                                                           :
                                                           :
PJSC NATIONAL BANK TRUST                                   :
                                                           :
                    Defendant.                             :
                                                           :
                                                           :
------------------------------------------------------------------------------------X
```

**PLAINTIFF NATALIA PIROGOVA'S MEMORANDUM OF LAW**
**IN SUPPORT OF HER MOTION FOR AN PARTE TEMPORARYRESTRAINING**
**ORDER AND A PRELIMINARY INJUNCTION**

Law Offices of Victor A. Worms
48 Wall Street, Suite 1100
New York, New York 10005
 (212) 374-9590

*Attorneys for Plaintiff Natalia Pirogova*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES………………………………………………………………...iii

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF FACTS ......................................................................................................4

ARGUMENT………………………………………………………………………………...4

POINT I

MS. PIROGOVA IS ENTITLED TO A TRO AND A PRELIMINARY
INJUNCTION TO ENJOIN TRUST BANK FROM CONTINUING THE
LITIGATION OF THE RECOGNITION ACTION AND THE FRAUDULENT
CONVEYANCE ACTION BECAUSE SHE HAS SATISFIED ALL OF THE
LEGAL REQUIREMENTS FOR THE ISSUANCEOF A TEMPORARY
RESTRAINING ORDER AND A PRELIMINARY INJUNCTION AND
THE CONTINUINGLITIGATION OF THOSE ACTION BY TRUST BANK
VIOLATES FEDERAL LAW……………………………………………………………4

I.  The Likelihood of Success On The Merits…………………………………………….5

II. Irreparable Harm…………………………………………………………………….7

III.  The Balance of Equities…………………………………………………………... 9

IV.  The Public Interest Favor The Issuance Of
     A TRO And A Preliminary Injunction…………………………………………….12

POINT II

THE COURT SHOULD ISSUE A TRO AND A PRELIMINARY INJUNCTION
 ENJOINING TRUST BANK FROM CONTINUING THE LITIGATION OF THE
RECOGNITION ACTION AND THE FRAUDULENT CONVEYANCE ACTION
BECAUSE THERE ARE SERIOUS QUESTIONS GOING TO THE MERITS OF
THIS ACTION AND THE BALANCE OF HARDSHIPS TIPS STRONGLY IN
FAVOR OF MS. PIROGOVA…………………………………………………………..16

CONCLUSION…………………………………………………………………………..18

POINT I

THIS ACTION SHOULD BE DISMISSED FOR LACK OF
SUBJECT MATTER JURISDICTION BY THIS COURT UNDER
28 U.S.C. § 1332 SINCE CITIBANK DID NOT SUBMIT THE TRUST
AGREEMENT FOR THE COURT TO DETERMINE WHETHER
CITIBANK IS THE REAL PARTY IN INTEREST BECAUSE IT HAS
REAL AND SUBSTANTIAL CONTROL OVER THE TRUST ASSETS
AND IT FAILED TO IDENTIFY THE CITIZENSHIP OF EACH OF
THE BENEFICIARIES OF THE TRUST……………………………………………………….6

POINT II

THIS ACTION SHOULD BE DISMISSED UNDER Fed. R. Civ. P. 12(b) (6)
BECAUSE CITIBANK HAS NO STANDING TO HAVE COMMENCED
THIS ACTION SINCE IT WAS NOT THE HOLDER OF THE NOTE AND
MORTGAGE AT THE TIME IT COMMENCED THE UNDERLYING
FORECLOSURE ACTION……………………………………………………………….9

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*Airbnb, Inc. v. City of N.Y.*, 373 F. Supp. 3d 467, 480 (SDNY 2019)…………………...5

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
 784 F.3d 887, 895 (2d Cir. 2015)………………………………………………………..4

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701 (1972)…………………..8

*Brenntag Int'l Chems. v. Bank of India*, 175 F.3d 245,
 249 (2d Cir. 1999)……………………………………………………………………8

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
 598 F.3d 30, 35 (2d Cir. 2010)……………………………………………………….5

*Galvin v. New York Racing Ass'n*, 70 F. Supp. 2d 163,
 172 (EDNY 1998)…………………………………………………………………....8

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*,
 922 F. Supp. 2d 435, 439 (S.D.N.Y. 2013),
 *aff'd* 764 F.3d 210 (2d Cir. 2014)………………………………………………..4

*Hulinsky v. County of Westchester*,
 670 F.Supp.3d 100, 108 (S.D.N.Y. 2023)…………………………………………....4

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*,
 596 F.2d 70, 72 (2d Cir. 1979)…………………………………………………………5

*Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*,
 323 F. Supp. 2d 525, 531 (S.D.N.Y. 2004)……………………………………………7

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904,
 907 (2d Cir. 1990)……………………………………………………………………8

*Rodriguez ex rel. Rodriguez v. DeBuono*,
 175 F.3d 227, 234 (2d Cir. 1999)……………………………………………………8

*Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010)…………………………………..9

*Warner Cable v. Directv*, 497 F.3d 144, 152 (2d Cir. 2007)……………………………16

*Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)…………………………………5

 **Statutes**

22 U.S.C. § 8902 (4)………………………………………………………………..13

<u>**Orders**</u>

Executive Order 14024…………………………………………………………………6

Directive 4 (as amended) under Executive Order 14024…………………………......7,12

<u>**Regulations**</u>

31 C.F.R. § 587.406……………………………………………………………………..6

31 C.F.R. § 587.506(a)(1)……………………………………………………………14

31 C.F.R. § 587.506(d)………………………………………………………………...8

## PRELIMINARY STATEMENT

This memorandum of law is submitted by plaintiff Natalia Pirogova in support of her motion for an exparte temporary restraining order ("TRO") and a preliminary injunction enjoining defendant PJSC National Trust Bank ("Trust Bank") from violating Executive Order 14024 and the regulations promulgated thereunder by the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") in response to the invasion and continued aggression by Russia against Ukraine.

On April 15, 2021, after Russia's invasion of Ukraine, the President of the United States, Joseph R. Biden, Jr., pursuant to authority granted to him by the International Emergency Powers Act, 50 U.S.C. § 1701, *et seq*., signed Executive Order 14024, which imposed sanctions on Russia for various harmful foreign activities, including violating the territorial integrity of sovereign states.

Under Executive Order 14024, all U.S.-based "property and interests in property" of certain designated categories of Russian persons "are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in."

Trust Bank is 97.7% owned by the Central Bank of Russia, which is under blocking sanctions by the Government of the United States for Russia's invasion of and continued aggression against Ukraine.

Significantly, the blocking sanctions which apply to the Central Bank of Russia apply with equal force to Trust Bank, pursuant to 31 C.F.R. § 587.406, because Trust Bank is at least 50% owned by the Central Bank of Russia.

Nonetheless, Trust Bank, in direct violation of Executive Order 14024 and the enforcement regulations of that order which OFAC has promulgated, is pursuing two separate

legal actions in the Supreme Court of the State of New York, County of New York, to enforce a judgment in the amount of $43,663,096.81 (the "New York Judgment") on behalf of its parent company, the Central Bank of Russia.

The two legal actions are designated as *PJSC National Bank Trust v. Natalia Pirogova*, Supreme Court of the State of New York, County of New York, Index No. 656519/2020 (the "Recognition Action") and *PJSC National Bank Trust v. Natalia Pirogova*, et. al., Supreme Court of the State of New York, County of New York, Index No. 656520/2020 (the "Fraudulent Conveyance Action").

Trust Bank and its attorneys, Offit Kurman, P.A. ("Offit Kurman"), with offices at 590 Madison Avenue, 6th Floor, New York, New York 10022, are well aware that under 31 C.F.R. § 587.506(d), there can be no enforcement of the New York judgment against Ms. Pirogova "through execution, garnishment, or other judicial process. . ." on behalf of the Central Bank of Russia.

Notwithstanding, Trust Bank, in the Fraudulent Conveyance Action, is seeking to use the judicial process to have assets belonging to Ms. Pirogova turned over to it on behalf of the Central Bank of Russia even though, under 31 C.F.R. § 587.202, any such transfer would  be "null and void" and cannot "be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or interest in property."

 In addition, Trust Bank, on behalf of the Central Bank of Russia, is seeking to hold Ms. Pirogova in civil contempt and to imprison her until she provides documents and information that will permit Trust Bank, on behalf of the Central Bank of Russia, to levy and execute the New York Judgment against alleged assets of Ms. Pirogova in violation of federal law.

Thus, Trust Bank's continuing litigation of the two New York actions is an alleged fraud upon the New York court, an abuse of process, and a violation of the Supremacy Clause of the Constitution.

Accordingly, this Court should issue a TRO and a preliminary injunction enjoining Trust Bank, on behalf of the Central Bank of Russia, from continuing the litigation of the Recognition Action and the Fraudulent Conveyance Action in violation of federal law.

As more fully demonstrated below, Ms. Pirogova has satisfied the requirements for this Court to issue a TRO and a preliminary injunction enjoining Trust Bank from continuing the Recognition Action and the Fraudulent Conveyance Action and the enforcement of the New York Judgment in any state or federal court because there is a strong likelihood that Ms. Pirogova will prevail on the merits of the underlying action; she will suffer irreparable harm without a TRO and a preliminary injunction to maintain the status quo pending the litigation of this action; the balance of equities tips in her favor; and the public interest favors the issuance of a TRO and a preliminary injunction in this action.

Alternatively, Ms. Pirogova is entitled to a TRO and a preliminary injunction because there are sufficiently serious questions going to the merits of the underlying action to make them a fair ground for litigation, and the balance of hardships tips decidedly toward Ms. Pirogova.

Accordingly, this Court should issue an order enjoining Trust Bank from continuing to violate Executive Order 14024 and the regulations promulgated thereunder by OFAC, including Directive 4 (as amended) under Executive Order 14024, 31 C.F.R. § 587.201(a), 31 C.F.R. § 587.406, and 31 C.F.R. § 587.506(d) by the continuing the litigation of the Recognition Action and Fraudulent Conveyance Action and enjoining Trust Bank from continuing the litigation of the Recognition Action and the Fraudulent Conveyance Action and to otherwise seek to enforce

the New York Judgment in any state or federal court.

<h2 style="text-align:center"><u>STATEMENT OF FACTS</u></h2>

For a statement of the relevant facts, the Court is respectfully referred to the accompanying declaration of Victor A. Worms dated July 30, 2024, and the complaint in this action.

<h2 style="text-align:center"><u>ARGUMENT</u></h2>

<h3 style="text-align:center"><u>POINT I</u></h3>

**MS. PIROGOVA IS ENTITLED TO A TRO AND A PRELIMINARY INJUNCTION TO ENJOIN TRUST BANK FROM CONTINUING THE LITIGATION OF THE RECOGNITION ACTION AND THE FRAUDULENT CONVEYANCE ACTION BECAUSE SHE HAS SATISFIED ALL OF THE LEGAL REQUIREMENTS FOR THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION AND THE CONTINUING LITIGATION OF THOSE ACTION BY TRUST BANK VIOLATES FEDERAL LAW**

The purpose of a TRO and a preliminary injunction is to maintain the status quo until the factual issues of the underlying action may be resolved. *See e.g. Hulinsky v. County of Westchester*, 670 F.Supp.3d 100, 108 (S.D.N.Y. 2023).

The standard for issuing a TRO and a preliminary injunction under Rule 65 is the same. *3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020). A plaintiff seeking a TRO or preliminary injunction must establish: "(1) a likelihood of success on the merits [...]; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) and

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 922 F. Supp. 2d 435, 439 (S.D.N.Y. 2013), *aff'd* 764 F.3d 210 (2d Cir. 2014).

Separately, in the Second Circuit, a court may also issue a preliminary injunction if the moving party demonstrates "'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).

## I. The Likelihood of Success On The Merits

This Court should issue a TRO and a preliminary injunction restraining Trust Bank from continuing the litigation of the Recognition Action and the Fraudulent Conveyance Action because there is a likelihood that Ms. Pirogova will prevail on the merits of the underlying action.

To establish a likelihood of success, "plaintiffs 'need not show that success is an absolute certainty.'" *Airbnb, Inc. v. City of N.Y.*, 373 F. Supp. 3d 467, 480 (SDNY 2019). Instead, the plaintiff "need only make a showing that the probability of his prevailing is better than fifty percent." *Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985). Thus, "there may remain considerable room for doubt." *Id*.

It is beyond dispute that Trust Bank's continuing litigation of the Recognition Action and the Fraudulent Conveyance Action manifestly violates Executive Order 14024 and the regulations promulgated thereunder by OFAC, including Directive 4 (as amended) under Executive Order 14024, 31 C.F.R. § 587.201(a), 31 C.F.R. § 587.406, and 31 C.F.R. § 587.506(d) and constitutes an abuse of process and a fraud on the New York courts.

Trust Bank is 97.7% owned by the Central Bank of Russia. On April 15, 2021, the President of the United States, Joseph R. Biden, Jr., issued Executive Order 14024 entitled "Blocking Property With Respect To Specified Harmful Foreign Activities of the Government of the Russian Federation."

Executive Order 14024 imposes blocking sanctions for certain of Russia's activities by stating, in relevant part, as follows:

> All property and interest in property that are in the United States that hereafter come within the United States, or that are or hereafter come within possession or control of any United States person of the following persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in.

OFAC maintains a list of "Specially Designated Nationals [SDNs] and Blocked Persons." *See* Exec. Order No. 13,224 (2001), as amended by Exec. Order No. 13,886 (2019).

The blocking sanctions which OFAC has applied to Specially Designated Nationals [SDNs] and Blocked Persons applied to any entity which is at least 50% owned by the SDNs and the Blocked Persons.

In particular, 31 C.F.R. § 587.406, provides, in relevant part, as follows:

> Persons whose property and interests in property are blocked pursuant to § 587.201 have an interest in all property and interests in property of an entity in which such persons directly or indirectly own, whether individually or in the aggregate, a 50 percent or greater interest. The property and interests in property of such an entity, therefore, are blocked . . . .

Upon information and belief, under Russian law, the Central Bank of Russia is required to transfer 75% of its profits to the federal budget of the Russian State.

Critically, on May 19, 2023 when the U.S. Treasury issued Directive 4 (as amended)

under Executive Order 14024, the United States Government determined the following:

> . . . that <u>the Central Bank of the Russian Federation</u>, the National Wealth Fund of the Russian Federation, and the Ministry of Finance of the Russian Federation <u>are political subdivisions, agencies, or instrumentalities of the Government of the Russian Federation</u> . . . . (Emphasis added).

(*See* Exhibit "G" to Ms. Pirogova's complaint).

Accordingly, Directive 4 (as amended) under Executive Order 14024 prohibits "any transaction involving the Central Bank of the Russian Federation . . . including any transfer of assets to such entities. . . ."

Importantly, 31 C.F.R. § 587.506(d) provides, in relevant part, as follows:

> <u>Entry into a settlement agreement or the enforcement of any lien, judgment</u>, arbitral award, decree, <u>or other order through execution, garnishment, or other judicial process</u> purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 587.201 is prohibited . . . . (Emphasis added).

Therefore, Trust Bank cannot enforce the New York Judgment which it obtained in the Recognition Action against any of the alleged assets of Ms. Pirogova on behalf of the Central Bank of Russia, including specifically obtaining a turnover order of Ms. Pirogova's 49% membership interests in 175 Madison Holdings.

As such, Trust Bank's continuing litigation of the Recognition Action and the Fraudulent Conveyance Action is indisputably a violation of federal law.

In consequence, Ms. Pirogova has satisfied the requirement to demonstrate a likelihood of success on the merits of the underlying action to support the issuance of a TRO and a preliminary injunction in this action.

## II. Irreparable Harm

Irreparable harm is considered to be "'the single most important prerequisite for the issuance of a preliminary injunction.'" *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F.

Supp. 2d 525, 531 (S.D.N.Y. 2004) (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990). Irreparable harm exists where there is an "actual and imminent" injury "that cannot be remedied by an award of monetary damages." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (internal quotations omitted). *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995).

Significantly, the loss of a property interest constitutes irreparable harm militating in favor of the issuance of a TRO and a preliminary injunction.

Notably, the "Fourteenth Amendment, however, does not by itself create a property interest." *Galvin v. New York Racing Ass'n*, 70 F. Supp. 2d 163, 172 (EDNY 1998).

Rather, "the property interests protected by the Due Process Clause of the Fourteenth Amendment are defined by 'existing rules or understandings that stem from an independent source such as state law.'" *Id. citing Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701 (1972).

In the same vein, irreparable harm may also be found where there is a "substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).

Significantly, the loss of a property or liberty interest constitutes irreparable harm militating in favor of the issuance of a temporary restraining order and a preliminary injunction.

31 C.F.R. § 587.506(d) explicitly provides, in relevant part, as follows:

> Entry into a settlement <u>agreement or the enforcement of any lien, judgment,</u> arbitral award, decree, or <u>other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 587.201 is prohibited</u> . . . . (Emphasis added.).

Nonetheless, Trust Bank, on behalf of the Central Bank of Russia, has made a motion in the Fraudulent Conveyance Action for a turnover order for the 49% membership interests which Ms. Pirogova owns in 175 Madison NP Holdings, LLC ("175 Madison Holdings") towards the satisfaction of the New York Judgment which Trust Bank obtained in the Recognition Action.

This attempt by Trust Bank, on behalf of the Central Bank of Russia, to have Ms. Pirogova's 49% membership interests in 175 Madison Holdings turned over to it would not only violate 31 C.F.R. § 587.506(d), but it would result in the loss of Ms. Pirogova's property interest in 175 Madison Holdings in clear violation of federal law.

The loss by Ms. Pirogova of her property interest to Trust Bank, on behalf of the Central Bank of Russia, in violation of federal law would cause Ms. Pirogova irreparable harm.

In addition, Trust Bank, on behalf of the Central Bank of Russia, to enforce the New York Judgment in the Recognition Action, is seeking, in violation of federal law, to imprison Ms. Pirogova until she provides documents and information about her alleged assets.

The lost by Ms. Pirogova of her liberty so that Trust Bank, on behalf of the Central Bank of Russia, can enforce the New York Judgment even though judicial process cannot be used to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 587.201 constitutes irreparable harm that supports the issuance of a TRO and a preliminary injunction in this action.

## III. The Balance of Equities

Importantly, "[a] court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010).

The balance of hardships weighs in favor of the movant where it "has demonstrated sufficient hardship given that Defendants actions, if not enjoined will likely result in irreparable harm to the Plaintiff and Plaintiff is likely to succeed as to the merits of its case." *Ime Watchdog, Inc. v. Safa Abdulrahim Gelardi*, No. 22-CV-01032-PKC, 2022 U.S. Dist. LEXIS 86997, at *19 (E.D.N.Y. May 13, 2022) (citations and quotation omitted).

The balance of equities tips decisively in favor of Ms. Pirogova. In the bankruptcy case, the supposed Russian judgments were designated as claims in the Russian insolvency proceeding.

However, the Bankruptcy Court did not grant recognition of the Russian insolvency proceeding as either a "foreign main proceeding" or a foreign "nonmain proceeding" under 11 U.S.C. § 1502.

Instead, on December 17, 2018, the Bankruptcy Court issued an order dismissing the Chapter 15 proceeding against Ms. Pirogova "with prejudice." (A copy of the Bankruptcy Court's is annexed to the declaration of Victor A. Worms dated July 30, 2024 ("Worms Decl." as Exhibit "B").

In response, on December 26, 2018, the decision of the Bankruptcy Court dismissing the Chapter 15 proceeding with prejudice was appealed to this Court.

On January 8, 2020, this Court affirmed the Bankruptcy Court's dismissal of the Chapter 15 proceeding against Ms. Pirogova. (*See* Exhibit "C" to the Worms Decl.).

Rather than appeal this Court's order to the Second Circuit, on November 23, 2020, Trust Bank commenced the Recognition Action seeking recognition, as foreign judgments, of the three claims that were presented to the Bankruptcy Court as claims in the Russian Insolvency Proceeding against Ms. Pirogova.

On November 1, 2021, the Supreme Court, New York County issued a decision and order recognizing the three supposed Russian Judgments, and on May 21, 2022, despite objections by Ms. Pirogova, the Supreme Court entered a monetary judgment in the amount of $43,663,096.81, which included interest at "9% per annum from July 11, 2016.

In the interim, Russia invaded Ukraine, and on April 15, 2021, the President of the United States, Joseph R. Biden, Jr., issued Executive Order 14024 entitled "Blocking Property With Respect To Specified Harmful Foreign Activities of the Government of the Russian Federation."

Critically, on May 19, 2023 when the U.S. Treasury issued Directive 4 (as amended) under Executive Order 14024, the United States Government determined the following:

> . . . that <u>the Central Bank of the Russian Federation</u>, the National Wealth Fund of the Russian Federation, and the Ministry of Finance of the Russian Federation <u>are political subdivisions, agencies, or instrumentalities of the Government of the Russian Federation</u> . . . . (Emphasis added).

In addition, 31 C.F.R. § 587.506(d) provides, in relevant part, as follows:

> Entry into a settlement agreement or the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 587.201 is prohibited . . . .

Thus, Trust Bank cannot enforce the judgment that it obtained in the Recognition Action against any of the assets of Ms. Pirogova on behalf of the Central Bank of Russia since the continuing litigation of both the Recognition Action and the Fraudulent Conveyance Action are in violation of Executive Order 14024, and the regulations promulgated thereunder by OFAC, including Directive 4 (as amended) under Executive Order 14024, 31 C.F.R. § 587.201(a), 31 C.F.R. § 587.406, and 31 C.F.R. § 587.506(d).

It would be inequitable for Trust Bank, on behalf of the Central Bank of Russia, to use the

Recognition Action and the Fraudulent Conveyance Action to violate federal law and to get a turnover order for the assets of Ms. Pirogova, including specifically her 49% membership interests in 175 Madison Holdings, by judicial process when 31 C.F.R. § 587.506(d) makes clear that any such turnover or other transfer of assets belonging to Ms. Pirogova to Trust Bank is prohibited.

After the Bankruptcy Court denied recognition of the Russian insolvency proceeding and this Court affirmed the dismissal with prejudice of the Chapter 15 proceeding, in an attempt to circumvent that decision, Trust Bank commenced, on behalf of the Central Bank of Russia, the Recognition Action seeking recognition as foreign judgments what were listed as claims in the Russian insolvency proceeding.

This contrivance was inequitable, and the continuing litigation by Trust Bank of the Recognition Action and the Fraudulent Conveyance Action are designed to permit the Central Bank of Russia to evade the sanctions that the Government of the United States have imposed upon Russia for its invasion and continued aggression against Ukraine.

Thus, the balance of equities tips decisively in favor of Ms. Pirogova to support the issuance of a TRO and a preliminary injunction in this action.

## IV. The Public Interest Favor The Issuance of A TRO And A Preliminary Injunction

In this case, the public interest weighs in favor of granting a TRO and a preliminary injunction, as the public has an interest in ensuring that federal law is complied with and that decisions in state courts do not undermine the public policy of the Government of the United States.

Importantly, 22 U.S.C. § 8902, makes clear the policy of the United States towards Ukraine.

Specifically, 22 U.S.C. § 8902 (4), provides as follows:

> It is the policy of the United States-
>
> 4. <u>to use all appropriate economic elements of United States national power</u>, in coordination with United States allies, to protect the independence, sovereignty, and territorial and economic integrity of Ukraine; (Emphasis added).

Executive Order 14024 imposes blocking sanctions for certain of Russia's activities by stating, in relevant part, as follows:

> All property and interest in property that are in the United States that hereafter come within the United States, or that are or hereafter come within possession or control of any United States person of the following persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in.

Thus, the Government of the United States has decided that it will use "all appropriate economic elements of United States national power" to make sure that the Russian state and all of its "political subdivisions, agencies, or instrumentalities" will not have access to any properties or assets in the United States that will benefit the Russian state.

This is the reason that the United States government imposed blocking sanctions on the Central Bank of Russia. Despite the fact that Trust Bank is 97.7% owned by the Central Bank of Russia and, therefore, the blocking sanctions that have been imposed upon the Central Bank of Russia apply with equal force to Trust Bank, the Recognition Action and Fraudulent Conveyance Action are being litigated by Trust Bank in total disregards for federal law.

Amazingly, Trust Bank is being permitted to evade the sanctions which have been imposed upon the Central Bank of Russia because Trust Bank is being permitted to continue the litigation of the Recognition Action and the Fraudulent Conveyance Action as if the Government of the United

States has not issue blocking sanctions upon the Central Bank of Russia after the commencement of those two actions.

The Supremacy Clause of the Constitution mandates that federal law predominates state law and Executive Order 14024 and the regulations promulgated thereunder by OFAC, including Directive 4 (as amended) under Executive Order 14024, 31 C.F.R. § 587.201(a),  31 C.F.R. § 587.406, and 31 C.F.R. § 587.506(d) clearly prohibit Trust Bank from continuing the litigation of the Recognition Action and the Fraudulent Conveyance Action.

Nonetheless, in utter disregard of federal law, Trust Bank, on behalf of the Central Bank of Russia, has made a motion for a turnover of the 49% membership interests in 175 Madison Holdings which is owned by Ms. Pirogova and is seeking to imprison Ms. Pirogova unless she turnover documents and information that Trust Bank believes will enable it to levy and execute on the alleged assets of Ms. Pirogova by means of judicial process in violation of 31 C.F.R. § 587.506(d).

Significantly, Offit Kurman appears to be violating 31 C.F.R. § 587.506(a)(1) in its representation of Trust Bank, on behalf of the Central Bank of Russia, in the continuing litigation of the Recognition Action and the Fraudulent Conveyance Action.

Specifically, 31 C.F.R. § 587.506(a)(1) provides, in relevant part, as follows:

> (a) The provision of the following legal services to or on behalf of persons whose property and interests in property are blocked pursuant to § 587.201 is authorized, provided that any <u>receipt of payment of professional fees and reimbursement of incurred expenses must be authorized pursuant to § 587.507, which authorizes certain payments for legal services from funds originating outside the United States</u>; via specific license; or otherwise pursuant to this part:
>
> (1) Provision of legal advice and counseling on the requirements of and compliance with the laws of the United States or any jurisdiction within the United States, <u>provided that such advice and counseling are not provided to facilitate transactions in violation of this part</u>;  (Emphasis added).

It is reasonable to presume that Offit Kurman is being paid legal fees and reimbursed for

expenses incurred in representing Trust Bank on behalf of the Central Bank of Russia in the continuing litigation of the Recognition Action and the Fraudulent Conveyance Action.

However, there is no indication that the payment to Offit Kurman of legal fees and reimbursable expenses have been authorized under 31 § 587.507 and that the payment to Offit Kurman of any such legal fees and reimbursable expenses originated from a source or sources outside of the United States.

Indeed, based upon Offit Kurman's continuing litigation of the Recognition Action and the Fraudulent Conveyance Action, more specifically the motions for a turnover of the 49% of the membership interests owned by Ms. Pirogova in 175 Madison Holdings and for contempt against Ms. Pirogova, the legal services which Offit Kurman has been providing Trust Bank, on behalf of the Central Bank of Russia, is not limited to "legal advice and counseling on the requirements of and compliance with the laws of the United States or any jurisdiction within the United States" as required by 31 C.F.R. § 587.506(a)(1).

Instead, by actively litigating the Recognition Action and the Fraudulent Conveyance Action for Trust Bank on behalf of the Central Bank of Russia, Offit Kurman appears to be aiding and abetting Trust Bank in attempting to evade the blocking sanctions that have been imposed upon the Central Bank of Russia.

At a minimum, Offit Kurman should be required, under 31 C.F.R. § 587.506(a)(1), to disclose the total amount in legal fees and reimbursable expenses which it has been paid by Trust Bank, on behalf of the Central Bank of Russia, for the continuing litigation of the Recognition Action and the Fraudulent Conveyance Action, and it should be required to demonstrate that the funds for the payment of its legal fees and reimbursable expenses originated from a source or sources outside the United States in compliance with 31 C.F.R. § 587.506(a)(1).

It is in the public interest that the laws of the United States are complied with and that the

policy of the United States to use "all appropriate economic elements of United States national power, in coordination with United States allies, to protect the independence, sovereignty, and territorial and economic integrity of Ukraine" not be undermined by any legal action in state or federal court which contravenes that public policy.

The continuing litigation of the Recognition Action and the Fraudulent Conveyance Action undermines the public policy of the United States in respect to Russia's invasion of and aggression towards Ukraine.

Thus, the public interest militates in favor of granting a TRO and a preliminary injunction in this action so that the status quo can be maintained while this action is being litigated.

Otherwise, any judgment which the Court may issue in this action could be rendered ineffectual.

**POINT II**

**THE COURT SHOULD ISSUE A TRO AND A PRELIMINARY INJUNCTION ENJOINING TRUST BANK FROM CONTINUING THE LITIGATION OF THE RECOGNITION ACTION AND THE FRAUDULENT CONVEYANCE ACTION BECAUSE THERE ARE SERIOUS QUESTIONS GOING TO THE MERITS OF THIS ACTION AND THE BALANCE OF HARDSHIPS TIPS STRONGLY IN FAVOR OF MS. PIROGOVA**

In the event that the Court were to find that Ms. Pirogova has not met her burden of showing a likelihood of success on the merits, the Court should still grant a TRO and a preliminary injunction because there are "'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward'" Ms. Pirogova. *Citigroup*, 598 F.3d at 35 (citations omitted); *See Warner Cable v. Directv*, 497 F.3d 144, 152 (2d Cir. 2007)

In this respect, "[t]he 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving

party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

However, "[b]ecause the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips decidedly' in its favor . . . its overall burden is no lighter than the one it bears under the 'likelihood of success' standard." *Id.* (Internal citations omitted).

In this case, there are serious questions going to the merits of this action to make them a fair ground for litigation as to whether the continuing litigation of the Recognition Action and the Fraudulent Conveyance Action by Trust Bank violates Executive Order 14024, and the regulations promulgated thereunder by OFAC, including Directive 4 (as amended) under Executive Order 14024, 31 C.F.R. § 587.201(a), 31 C.F.R. § 587.406, and 31 C.F.R. § 587.506(d).

Thus, manifestly a TRO and a preliminary injunction should be granted by this Court to maintain the status quo so that the Court can determine whether the continuing litigation of the Recognition Action and the Fraudulent Conveyance Action violates federal law. This is a serious question which goes to the merits of the underlying action.

Moreover, as discussed above, the balance of hardships tips decidedly in favor of Ms. Pirogova because Trust Bank, on behalf of the Central Bank of Russia, is attempting to have assets belonging to Ms. Pirogova turnover to it and to have Ms. Pirogova imprisoned until she produced documents and information that will assist it to take possession of other alleged assets of Ms. Pirogova in violation of federal law.

Trust Bank, on behalf of the Central Bank of Russia, cannot continue the Recognition Action and the Fraudulent Conveyance Action litigation as if the Government of the United

States did not pass any sanctions in response to Russia's invasion and continued aggression against Ukraine.

As instrumentalities of the State of Russia, Trust Bank and the Central Bank of Russia have only their government to blame for any TRO and Preliminary Injunction that this Court may issue in this action.

## CONCLUSION

For the foregoing reasons, this Court should issue a TRO and a preliminary injunction enjoining Trust Bank from continuing to violate Executive Order 14024 and the regulations promulgated thereunder by OFAC, including Directive 4 (as amended) under Executive Order 14024, 31 C.F.R. § 587.201(a),  31 C.F.R. § 587.406, and 31 C.F.R. § 587.506(d) by the continuing the litigation of the Recognition Action and Fraudulent Conveyance Action and enjoining Trust Bank from continuing the litigation of the Recognition Action and the Fraudulent Conveyance Action and to otherwise seek to enforce the New York Judgment in any state or federal court.

Dated: New York, New York
        July 31, 2024

Law Offices of Victor A. Worms

By: _____
        Victor A. Worms
        48 Wall Street, Suite 1100
        New York, New York 10005
        (212) 374-9590

*Attorneys for plaintiff Natalia Pirogova*